# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HENRY B. HARRIS,**

      **Petitioner,**

**v.**                                    **Civil Action No. 3:13cv161**
                                                      **(Judge Groh)**

**THOMAS McBRIDE, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

This case was initiated on November 6, 2013, by the filing of a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. In the petition, the *pro se* petitioner alleges that the State of West Virginia is denying him the right to appeal his conviction in a manner that is in direct violation of the United States Constitution. Presently before the Court is the respondent's answer and motion to dismiss the petition for lack of jurisdiction. The petitioner filed a response to the respondent's motion on January 28, 2014, and the petitioner filed a reply on February 5, 2014.

## I. Factual and Procedural Background

### A. Petitioner's Conviction and Sentence

According to the record available to the undersigned, the petitioner was indicted by a Grand Jury sitting in the Circuit Court of Hancock County on six counts of First Degree Sexual Assault and one count of Crimes Against Nature. Based on information supplied by the petitioner and respondent it appears that the charges involved four (4) separate female victims who, as alleged by

the State of West Virginia, were minors at the time of the incidents. The petitioner moved to sever the charges and requested that the state elect which offenses should proceed to trial first. The State elected to try Counts 6 and 7 first. On October 31, 2002, a petit jury acquitted the petitioner as to Count 7, and it appears that during pretrial proceedings the State moved to dismiss Count 6. (Doc. 1-9, pp 4-5). On December 6, 2002, the matter came on for trial as to Counts 1, 2 and 3 of the indictment. During pretrial proceedings held first thing that morning, the parties agreed to incorporate Count 3 of the indictment into Count 2, thus, making for a trial on two charges of Sexual Assault in the First Degree. Ultimately, the jury returned a guilty verdict as to Count 1 and Count 2 of the indictment, each charging Sexual Assault in the First Degree.[1] (Doc. 1-9, p. 7). On or about January 7, 2003, the state served its motion to *Nolle Prosequi* the remaining offenses, effectively dismissing any and all remaining charges against the petitioner. On January 14, 2003, the petitioner was sentenced to 10-20 years on each count, to run consecutively, for an aggregate term of 20-40 years.

B. **Petitioner's Direct Appeal**

The petitioner's nine-page petition for appeal was not filed until March 12, 2012. In the years between his conviction and appeal, the petitioner was repeatedly re-sentenced and had several attorneys appointed as appellate counsel.[2] The petitioner's appeal brief raised one assignment of

---

[1] Both counts of the indictment alleged that the petitioner committed Sexual Assault in the First Degree by "unlawfully and feloniously engaging in sexual intrusion" with the victim, identified by herein as "M.R.W." Count 1 alleged that an assault occurred "[from on or about January 1, 1982 through December 5, 1983," while Count 2 alleged an assault "from on or about December 6, 1982 through December 31, 1984." M.R.W. was between four and six years old during this time period, and the respondent was between 40 and 42 years old. (Doc. 1-8, p.1).

[2] Much of the rather tortuous history of the petitioner's road to an actual appeal is set forth in the undersigned's Report and Recommendation, dated January 2, 2008, (Doc. 22) in Civil

error:

> The Circuit Court of Hancock County erred by improperly permitting the state to introduce evidence pertaining to the Petitioner's prior, extraneous bad acts, otherwise prohibited by Rule 404(b) of the West Virginia Rules of Evidence, without, first, conducting a hearing, as recommended by the holding set forth in Syllabus Point 2 of State v. McGinnis, 193 W.Va. 147, 455 S.E.2d 516 (1994) to determine the admissibility of the same; or providing the jury a curative instruction, once it came in for their consideration.

(Doc. 1-9, p.4).

On April 11, 2013. The West Virginia Supreme Court of Appeals issued its *per curiam* opinion which found no error and affirmed the petitioner's conviction. (Doc. 1-8).

### D. **Petitioner's Federal Habeas Proceedings**

In his petition, the petitioner alleges that "the State of West Virginia [is] Denying the petitioner his constitutional right to appeal in a manner that is in direct violation of United States Constitution due process rights, equal protection rights; and citizen rights warranting the intravention [sic] by the Federal Courts to release petitioner for this denial reversing conviction and vacating sentence." (Doc. 5, p. 6).

### E. **The Respondent's Motion to Dismiss**

In his motion to dismiss, the respondent argues that the petitioner is seeking relief from this Court to obtain an appeal to the West Virginia Supreme Court of his criminal conviction. However, because the petitioner has obtained such an appeal, and therefore, has already obtained the relief he seeks, the respondent argues that this court can afford the petitioner no relief, and the case is moot.

### F. **Petitioners' Response**

---

Action No. 5:07cv62. It appears that the petitioner was re-sentenced for the final time on April 8, 2011. (Doc. 1-12).

In his response, the petitioner appears to argue that he has not "had his day in the Supreme Court of West Virginia." (Doc. 24, p.1). In support of this contention, the petitioner alleges that the transcripts were altered. Moreover, it appears that the petitioner may be alleging that the Circuit Court altered the transcripts. The petitioner also alleges that if he had his appeal transcripts on time in 2003, he would have had a good shot of being released or receiving a new trial.

**G. Respondent's Reply**

The respondent argues that the petitioner's "new" allegation that his appeal was tainted because the transcripts were "altered" does not entitle him to relief. More specifically, the respondent notes that the petitioner attached several pages of these allegedly altered transcripts to his response. However, the transcripts that he attaches are actually transcripts of his testimony in his first trial, a trial at which he was acquitted. Therefore, the respondent argues that the alterations in those transcripts are meaningless because those transcripts could not have influenced the appeal of the conviction in his second trial-the case at issue here. Moreover, the respondent notes that the differences the petitioner cites to in the transcripts of the first trial are because the first of these transcripts is clearly marked as a rough draft. The second transcript, which was signed by the court reporter, is not marked as a rough draft, and is the final version.

The respondent also contends that the petitioner's claims that the transcript of the trial at issue here are incorrect also fails to state a claim for habeas relief. Specifically, the petitioner alleges that trial counsel was asked twice if she wanted the jury polled after it returned its verdict, but the transcript reveals she was only asked once. The respondent maintains that the fact that the petitioner disagrees with what is contained in the transcript is insufficient to overcome the presumption of the transcript's accuracy.

## II. Analysis

To the extent that the petitioner's habeas petition alleges that he has been denied the right to appeal his conviction to the West Virginia Supreme Court, the same is not supported by the record. While is clear that the petitioner's appeal was delayed for many years, the fact remains that an appeal was filed, and the West Virginia Supreme Court denied the same and confirmed the petitioner's conviction. Therefore, to the extent that the petitioner is attempting to secure this Court's assistance in having his appeal finalized, the same is clearly moot.[3]

In addition, to the extent that the petitioner is attempting to raise alleged inaccuracies in his trial transcripts as grounds for habeas relief, the same fails. "It is well-established that a criminal defendant possess no general constitutional right to appellate review. Trenkler v. U.S., 536 F.3d 85, 100 (1st Cir. 2008) *citing* McKane v. Durston, 153 U.S. 684, 687 (1894); Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001); See e.g., Griffin v. Illinois, 351 U.S. 12, 18 (1956) (plurality opinion) (noting that "a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."). However, "where a state provides a statutory right to appeal, that right must meet the constitutional requirements of due process." Burrell v. Swartz, 558 F.Supp. 91, 92 (S.D.N.Y. ). Accordingly, the state must afford defendants with "fair and adequate procedure[s] for settling transcripts." Id. However, this does not extend to a requirement of an "absolutely accurate trial transcript.'" Forte v. Sullivan, 996 F.2d 1440 (1st Cir. 1992)(per curiam)(Table)(test available at 1992 WL 137509, n.2)(quoting Burrell, 558 F.Supp. at 92.

---

[3]The undersigned in no way expresses the opinion that this Court could somehow intercede in the petitioner's state court appeal if the same were still pending.

The petitioner has made but a bald assertion that the transcript of the trial that is at issue here incorrectly indicates that his trial counsel was asked once, rather than twice, if she wanted the jury polled. The fact that the petitioner disagrees with what is contained in a transcript is insufficient to overcome the presumption of the transcript's accuracy. Here, "[b]esides his own speculation, [petitioner] does not present any reason why [the Court] should suspect these transcripts to be inaccurate." Norris v. Schotten, 146 F.2d 314, 333 (6th Cir. 1998). *See also* Haynes v. McCaughtry, No. 90-2880, 1992 WL 55493, at *2 (7th Cir. March 24, 1992)("Court transcripts are presumed correct, and [petitioner's] unsupported assertion cannot overcome that presumption."); Handy v. Giubino, No. CV 03-4204 ABC (AJW), 2013 WL 3467063), at *22 (C.D. Cal. July 8, 2013)("The official court reporter certified that the transcripts comprised a full, true and accurate transcript of the proceedings, and petitioner's conclusory allegations do not overcome the presumption that the reporter's transcript is correct."); Van Stuyvesant v. Conwqy, No. 03 Civ. 3856 (LAK), 2007 WL 2584775, at *37 m.34 (S.D.N.Y. Sept. 7, 2007)(where petitioner claims transcript was inaccurate, "he would have to overcome the 'presumption of regularity that attaches' to state trial transcripts, as well as the certification made by the court reporter that the transcript was true and accurate.")(internal citations omitted).

Moreover, even if this Court accepted that the transcript was inaccurate in reflecting that the trial court only asked once if a jury poll was requested, when it was twice, he still would not be entitled to relief. The petitioner simply has alleged an error without asserting how that error prejudiced his statutory right to appeal. Furthermore, the undersigned can think of no reason why the issue of whether counsel was asked once or twice whether she wished the jury polled is material to the validity of the petitioner's conviction.

Finally, were the Court inclined to construe the petition liberally so as to raise the one claim that has been exhausted by virtue of his appeal, the petitioner still is not entitled to relief from this Court. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1); *see* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 405. A state court decision "involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." <u>Id</u>. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. <u>Id.</u> at 411.

In this particular matter, the only claim raised on appeal, and thus the only claim exhausted for purposes of a habeas petition, is the assertion that the trial court erred by allowing the prosecution to admit evidence alleging the petitioner committed other, uncharged sexual assaults against the victim in violation of Rule 404(b). In the alternative, once the evidence was introduced, the

7

petitioner asserted that the circuit court, *sua sponte* should have provided the jury with a curative instruction to limit their use of the evidence.

In denying the petitioner's appeal, the West Virginia Supreme Court noted that the majority of federal circuits "have held that Rule 404(b) applies only to limits on the admission of other acts extrinsic to the one charged. Under that rule, acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." (Doc. 1-8, p. 3). The Court then made a careful examination of the decisions of various federal courts, including the United States Supreme Court, the Fourth Circuit, Sixth Circuit and Eleventh Circuit which establish the appropriate test to determine whether other acts are intrinsic or extrinsic to the one charged. Based on those decisions, the West Virginia Supreme Court determined that the evidence challenged by the defendant was intrinsic evidence, inextricably intertwined with the acts charged in the indictment, and accordingly, it did not fall under Rule 404(b)s limitation on admissible evidence. That decision is neither contrary to, nor does it involve an unreasonable application of, clearly established Federal law. Therefore, it fails to state a claim for relief under 28 U.S.C. § 2254.

### III.  Recommendation

For the reasons set forth above, it is recommended that the respondent's Motion to Dismiss (Doc. 19) be **GRANTED** and petitioner's § 2254 petition be **DISMISSED with PREJUDICE.** It is further recommended that the petitioner's pending motions (Docs. 14 and 15) be **DENIED as Moot**..

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any

objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

    DATED: May 23, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE